**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**

---

SHIVA BANIYA, JAYA BHANDARI, GYANU CHAND, RAM KUMAR DHAKAL, PRABIN GAUTAM, SONAM GYALPO, CHANDRISWOR KANDEL, RAJENDRA KHADKA, CHITRA KHATRI, KANCHHA LAMA, PASANG LAMA, JANG PAL, DAWA SANGPO, KUMAR SHARMA, SANTOSH SHARMA, ANGNIMA SHERPA, RAGHUBIR SHERPA, SANIL SIKHRAKAR, AND YAM SUNUWAR,

                    Plaintiffs,

      -against-

STEVEN KESHTGAR, SAVERIO SETTANNI, SUDHEER KUMAR, AND MARKETING INC. OF ISLANDIA,

                    Defendants.

No. 16-cv-1947

**COMPLAINT**

**JURY TRIAL DEMANDED**

---

Plaintiffs Shiva Baniya, Jaya Bhandari, Gyanu Chand, Ram Kumar Dhakal, Prabin Gautam, Sonam Gyalpo, Chandriswor Kandel, Rajendra Khadka, Chitra Khatri, Kanchha Lama, Pasang Lama, Jang Pal, Dawa Sangpo, Kumar Sharma, Santosh Sharma, Angnima Sherpa, Raghubir Sherpa, Sanil Sikhrakar, and Yam Sunuwar, by their attorneys The Legal Aid Society, Kaye Scholer LLP, and Main Street Legal Services, Inc., upon knowledge as to themselves and upon information and belief as to other matters, allege as follows:

## NATURE OF THE CASE

1.     This action seeks redress for violations of the federal Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"). In a fundamental breach of their statutory obligations, defendants Steven Keshtgar ("Keshtgar"), Saverio Settanni ("Settanni"), Sudheer Kumar ("Kumar"), and Marketing Inc. of Islandia ("Marketing") have willfully engaged in

unlawful employment policies and practices through their operation of a chain of gas stations located throughout Long Island, New York, in violation of federal and state law.

2.       Plaintiffs are or were at all relevant times employed as gas station attendants or cashiers at gas stations controlled by defendants.

3.       Defendants controlled or had the power to control the operations at each of the gas stations where the plaintiffs were employed during all relevant periods.  Defendant Keshtgar owned the gas stations.  Upon information and belief, defendant Keshtgar employed defendants Saverio Settanni and Sudheer Kumar to manage these gas stations. Defendants Settanni and Kumar had the power to set schedules and pay, and to hire and fire workers at these locations. Defendants Settanni and Kumar reported directly to defendant Keshtgar regarding the operation of these businesses.  Defendant Keshtgar owns defendant Marketing Inc. of Islandia. Defendant Marketing Inc. of Islandia operates defendant Keshtgar's various gas stations.

4.       Each of the gas station locations owned and operated by defendant Keshtgar at which plaintiffs worked had over $500,000 in annual gross sales during the time period relevant to this lawsuit.

5.       Defendant Keshtgar is well aware of the requirements of the federal and state wage and hour laws, having been sanctioned for violating these laws in 2007.  Despite this, defendants committed numerous violations of federal and state wage and hour laws, including:

- failing to pay plaintiffs the full minimum wage, as defined by the FLSA and NYLL;

- *failing to record and credit all of the hours plaintiffs worked in defendants' gas* stations — including time that plaintiffs  worked in excess of 40 hours per week — and failing to compensate plaintiffs at all for unrecorded time worked;

2

- failing to pay plaintiffs in a timely fashion, if at all;

- failing to pay plaintiffs the required overtime rate, as defined by the FLSA and the NYLL;

- routinely denying certain plaintiffs the right to take meal and rest breaks required by the NYLL;

- failing to compensate plaintiffs with an extra hour of pay at the minimum wage rate for days in which they worked an interval of more than 10 hours ("spread-of-hours pay"), as required by the NYLL;

- requiring certain plaintiffs to purchase company-issued uniforms and failing and/or refusing to compensate plaintiffs for the laundering fees of those uniforms;

- taking illegal deductions from certain plaintiffs' wages for the cost of the uniforms;

- taking illegal deductions from certain plaintiffs' wages for items stolen by third parties or missing from stores;

- failing to reimburse certain plaintiffs for transportation costs incurred while on the job;

- requiring certain plaintiffs to reside in housing owned or controlled by one of the defendants, and illegally deducting "rent" from plaintiffs' wages for the required housing; and

- failing to provide plaintiffs with legally required notices concerning their pay and *legally adequate wage statements*.

3

6.     Numerous corporate entities owned or managed by defendants that jointly employed plaintiffs have sought bankruptcy protection ("the Bankrupt Entities").[1]  Plaintiffs do not seek any relief against those entities in this action.  Defendants in this action have not sought bankruptcy protection.

7.     By the conduct described in this complaint, defendants willfully committed widespread violations of the FLSA, 29 U.S.C. § 201 *et seq.* and supporting regulations, and the NYLL §§ 190, 650 *et seq.* and supporting regulations.

## JURISDICTION AND VENUE

8.     This court has jurisdiction over plaintiffs' claims under the FLSA pursuant to 28 U.S.C. §§ 1331 and 1337 and 29 U.S.C. § 216(b).

9.     This court has jurisdiction over plaintiffs' state law claims pursuant to 28 U.S.C. § 1367, because these claims are so closely related to plaintiffs' claims under the FLSA that they form part of the same case or controversy.

10.    This court is empowered to issue a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202.

11.    Venue is proper in the Eastern District of New York pursuant to 28 U.S.C. § 1391(b)(2), because a substantial part of the events giving rise to the claims occurred in this

---

[1] The Bankrupt Entities owned and controlled by Keshtgar are located at: 1980 Broadcast Plaza, Merrick, NY 11566 (Airport Development Corp., Bohemia Development Corp., Centereach Development Corp., Islandia Development Corp., Oceanside Enterprises, Inc., Port Jefferson Development Corp., Smithtown Development Corp.); 525 Wicks Road, Brentwood, NY 11717 (Brentwood Development Corp., Hauppauge Development Corp., Holbrook Development Corp.); 1889 Route 112, Coram, NY 11727 (Coram Associates Corp.); 5665 Sunrise Highway, Holbrook, NY 11741 (Holbrook Development Corp.); 1395 Veterans Memorial Highway, Islandia, NY 11788 (Islandia Development Corp.); 1727 Veterans Highway, Islandia, NY 11749 (Islip Development Corp.); 3239 Sunrise Highway, Islip Terrace, NY 11752 (Islip Development Corp.); 286 Express Drive South, Medford, NY 11763 (Medford Development Corp.); 260 Motor Parkway, Brentwood, NY 11717 (Motor Parkway Enterprises Inc.); 2962 Long Beach Road, Oceanside, NY 11572 (Oceanside Enterprises, Inc.); 315 Patchogue Road, Port Jefferson, NY 11779 (Port Jefferson Development Corp.); 4560 Expressway Drive South, Ronkonkoma, NY 11779 (Ronkonkoma Development Corp.), 819 W. Jericho Turnpike, Smithtown, NY 11787 (Smithtown Development Corp.); 410 Wheeler Road, Hauppauge, NY 11788 (Wheeler Development LLC).

4

district, and because one or more of the defendants either resides in or maintains an office in this district.   Defendants have also received substantial compensation in this district by doing business here and engaging in numerous activities that have had an effect in this district.

**PARTIES**

**I.   DEFENDANTS**

    **A.   Steven Keshtgar**

12.   Defendant Steven Keshtgar is one of the largest owners of gas stations on Long Island.   Since at least September 2009, Keshtgar has owned more than 70 corporate entities, many of which operated gas stations.   Plaintiffs worked at gas stations owned and operated by defendant Keshtgar.

13.   At some of the gas stations, defendant Keshtgar also owned and controlled retail outlet franchises, such as 7-Eleven and Dunkin' Donuts franchises, where certain plaintiffs worked.

    **B.   Saverio Settanni**

14.   Defendant Saverio Settanni is or was at all relevant times the general manager of the gas stations owned by defendant Keshtgar at which plaintiffs worked.

    **C.   Sudheer Kumar**

15.   Defendant Sudheer Kumar is or was at all relevant times a general manager of gas stations owned by defendant Keshtgar.

16.   Defendant Kumar was the manager in charge of the stations where plaintiffs worked.

5

17.    At all relevant times, defendant Kumar owned or had control over houses at 15 Linda Lane, Central Islip, NY (the "Linda Lane house"), and 23 Wintergreen Drive, Coram, NY (the "Wintergreen house").

**D.    Marketing Inc. of Islandia**

18.    Defendant Marketing Inc. of Islandia is a domestic business corporation registered as doing business in New York with its official office listed as 701 West Montauk Highway, Bay Shore, New York 11706.

19.    Defendant Keshtgar is the Chief Executive Officer of Marketing.

20.    Marketing acted as a centralized manager of the income and expenses and was the parent corporation of the Bankrupt Entities.

21.    Marketing hosted monthly meetings, at which the managers, defendants Settanni and Kumar, and defendant Keshtgar discussed general business and what was needed at the various locations.

22.    Marketing is listed on certain plaintiffs' pay stubs and is the titular employer of the managers of Keshtgar's gas stations.

23.    Marketing, at all relevant times, has been engaged in commerce or in an industry or activity affecting commerce in an enterprise with annual gross volume sales made or business done of not less than $500,000.

**E.    Role of Defendants as Employers**

24.    At all relevant times, and as a matter of economic reality, defendants were employers of plaintiffs within the meaning of the FLSA and the NYLL.

25.    At all relevant times, and as a matter of economic reality, plaintiffs were employees of defendants within the meaning of the FLSA and the NYLL.

26.     Defendants employed and/or jointly employed plaintiffs within the meaning of the FLSA and NYLL.

27.     Facts which demonstrate that defendants were plaintiffs' employers include:

- Defendants all suffered or permitted plaintiffs to work at gas stations owned or controlled by defendants.

- Each of the defendants acted directly or indirectly in the interest of one another in relation to plaintiffs.

- Defendants each had an economic interest in the gas stations at which plaintiffs worked.

- Defendants all benefited from plaintiffs' work.

- Defendants each had functional or formal control over terms and conditions of plaintiffs' work.

- Plaintiffs performed work integral to defendants' enterprise.

**1.     Defendant Keshtgar was Plaintiffs' Employer**

28.     Defendant Keshtgar owns the gas stations where plaintiffs worked and also owns defendant Marketing.  Defendant Keshtgar directed the operations of the other defendants and exercised operational and financial control over all of the gas stations at which plaintiffs worked. For example, defendant Keshtgar hired defendants Saverio Settanni and Sudheer Kumar to manage these gas stations. Defendants Settanni and Kumar reported directly to defendant Keshtgar regarding the operation of these businesses.  Defendant Keshtgar had the authority to fire defendants Settanni and Kumar.

29.     Defendant Keshtgar promulgated the employment policies, including *compensation policies, for the gas stations at which plaintiffs worked.*

30.    Defendant Keshtgar had the power to control plaintiffs' work and working conditions at each of defendants' gas station locations.

31.    Defendant Keshtgar had the power to hire and fire plaintiffs, as well as to control the terms and conditions of their employment.

32.    Defendant Keshtgar determined the rates and methods of compensation provided to plaintiffs, had the power to withhold plaintiffs' compensation, maintained purported employment records, and was responsible for complying with regulations of governmental agencies.

### 2.    Defendant Settanni was Plaintiffs' Employer

33.    Under the supervision of defendant Keshtgar, defendant Settanni controlled and had the right to control plaintiffs' work at defendants' gas station locations.

34.    Defendant Settanni was general manager of the gas stations where plaintiffs worked.

35.    Defendant Settanni had the power to hire and fire plaintiffs, had and exercised the power to control the terms and conditions of their employment, set their hours and supervised their work, helped determine rates and methods of compensation provided to plaintiffs, and was in charge of payroll at the gas station locations where plaintiffs worked.

### 3.     Defendant Kumar was Plaintiffs' Employer

36.     Under the supervision of defendant Keshtgar, defendant Kumar controlled and had the right to control plaintiffs' work and working conditions at defendants' gas station locations.

37.     Defendant Kumar was the manager of the gas stations where plaintiffs worked. Defendant Kumar held himself out as plaintiffs' employer by telling them that he was their "boss."

38.     Defendant Kumar hired and had the power to fire plaintiffs, had and exercised the power to control the terms and conditions of their employment, set their hours and supervised their work, helped determine rates and methods of compensation provided to plaintiffs and paid them when they were paid.

39.     Defendant Kumar took illegal deductions from plaintiffs' pay.

### 4.     Defendant Marketing Inc. of Islandia was Plaintiffs' Employer

40.     Defendant Marketing is the employer of the managers at the gas stations at which plaintiffs worked.

41.     The accounts for all of the gas stations owned by defendant Keshtgar were kept by defendant Marketing. Marketing acted as a centralized manager of the income and expenses and was the parent corporation of the gas stations.

42.     Time and pay records for employees of the gas stations at which plaintiffs worked were maintained by defendant Marketing.

43.     Defendant Keshtgar would usually meet with his managers, including defendants Settanni and Kumar, at the offices of defendant Marketing.   These meetings would run for

9

hours, and during these meetings the participants would discuss management of defendant Keshtgar's gas station business.

44.     Marketing is listed on certain plaintiffs' pay stubs and was the titular employer of the managers of defendant Keshtgar's gas stations.

**II.     PLAINTIFFS**

45.     Shiva Baniya is an adult individual residing in Hicksville, NY, and was employed by defendants. He worked at the gas station located at 525 Wicks Road, Brentwood, NY 11717 from approximately December 2012 until January 9, 2015.

46.     Jaya Bhandari is an adult individual residing in Queens County, NY, and was employed by defendants and worked at the gas stations located at 4560 Expressway Drive South, Ronkonkoma, NY 11779, 4909 Sunrise Highway, Bohemia, NY 11716, a Dunkin' Donuts located at 286 Express Drive South, Medford, NY 11763, and several other locations from approximately January 2011 until October 2013.

47.     Gyanu Chand is an adult individual residing in Brentwood, NY, and was employed by defendants and worked at a gas station located at 410 Wheeler Road, Hauppauge, NY 11788 from approximately September 2013 until December 23, 2014.

48.     Ram Kumar Dhakal is an adult individual residing in Central Islip, NY and was employed by defendants and worked at a gas station located at 4909 Sunrise Highway, Bohemia, NY 11716 from approximately September 14, 2014 until January 2, 2015.

49.     Prabin Gautam is an adult individual residing in Queens County, NY, and was employed by defendants and worked at gas stations located at 3239 Sunrise Highway, Islip Terrace, NY 117952, and 525 Wicks Road, Brentwood, NY 11717 from approximately February 2013 to January 9, 2015.

10

50.     Sonam Gyalpo is an adult individual residing in Holbrook, NY, and was employed by defendants and worked at various gas stations including one located at 2033 Middle Country Road, Centereach, NY 11720 for most of the period from approximately November 2013 until January 2015.

51.     Chandriswor Kandel is an adult individual residing in Central Islip, NY, and was employed by defendants and worked at a gas station located at 3239 Sunrise Highway, Islip Terrace, NY 11752 from approximately April 15, 2014 until January 9, 2015.

52.     Rajendra Khadka is an adult individual residing in Cockeysville, MD, and was employed by defendants and worked at a gas station located at 525 Wicks Road, Brentwood, NY 11717 from approximately March 2014 until January 14, 2015.

53.     Chitra Khatri is an adult individual residing in Lake Grove, NY, and was employed by defendants and worked at a gas station located at 5665 Sunrise Highway, Holbrook, NY 11741 from approximately January 2013 until late January 2015.

54.     Kanchha Lama is an adult individual residing in Queens County, NY, and was employed by defendants and worked at a gas station located at 315 Patchogue Road, Port Jefferson, NY 11776 from approximately February 2013 until January 16, 2015.

55.     Pasang Lama is an adult individual residing in Queens County, NY, and was employed by defendants and worked at gas stations located at 1980 Broadcast Plaza, Merrick, NY 11566, 315 Patchogue Road, Port Jefferson, NY 11779, and 1395 Veterans Memorial Highway, Islandia, NY 11749 from approximately 2010 until February 2015.

56.     Jang Pal is an adult individual residing in Brentwood, NY, and was employed by defendants and worked at a gas station located at 410 Wheeler Road, Hauppauge, NY 11788 from approximately December 2010 until December 23, 2014.

11

57.     Dawa Sangpo is an adult individual residing in Central Islip, NY, and was employed by defendants and worked at gas stations located at 4560 Expressway Drive South, Ronkonkoma, NY 11779, 525 Wicks Road, Brentwood, NY 11717, and 360 Wheeler Road, Hauppauge, NY 11788 from approximately January 1, 2010 until January 17, 2015.

58.     Kumar Sharma is an adult individual residing in Centereach, NY, and was employed by defendants and worked at a gas station located at 2033 Middle Country Road, Centereach, New York 11720 and at other locations from approximately November 2005 until January 7, 2015.

59.     Santosh Sharma is an adult individual residing in Centereach, NY, and was employed by defendants and worked at a gas station located at 2033 Middle County Road, Centereach, New York 11720 from approximately September 2012 until January 2015.

60.     Angnima Sherpa is an adult individual residing in Central Islip, NY, and was employed by defendants and worked at a gas station located at 1395 Veterans Memorial Highway, Islandia, New York 11788.

61.     Raghubir Sherpa is an adult individual residing in Queens County, NY, and was employed by defendants and worked at various gas stations, including gas stations located at 525 Wicks Road, Brentwood, NY 11717, 4560 Expressway Drive South, Ronkonkoma, NY 11779, and 360 Wheeler Road, Hauppauge, NY 11788 from approximately September 2009 until July 26, 2013.

62.     Sanil Sikhrakar is an adult individual residing in Austin, TX, and was employed by defendants and worked at a gas station located at 5665 Sunrise Highway, Holbrook, NY 11741 from approximately March 1, 2013 until early January 2015.

12

63.     Yam Sunuwar is an adult individual residing in Chester, PA, and was employed by defendants and worked at a gas station located at 286 Express Drive South, Medford, NY 11763 from approximately September 2006 until January 14, 2015.

## FACTUAL ALLEGATIONS

### I.     PLAINTIFFS WERE EMPLOYED BY DEFENDANTS AS CASHIERS AND ATTENDANTS

64.     Defendants hired plaintiffs to work at defendants' gas station locations as gas station attendants or cashiers.  Defendants employed the individual plaintiffs during various time periods from 2009 or earlier until 2015.

65.     Plaintiffs either worked as cashiers or on-call cashiers with responsibilities that included receiving payments and conducting cash register transactions for gasoline and other products in the convenience store; stocking shelves; stocking food; preparing food; cleaning the convenience store; and performing other miscellaneous duties.

66.     A cashier and an on-call cashier or "floater" had the same job responsibilities. The difference between the two positions was merely that a cashier went to work at the same location on a regular basis, while on-call cashiers would be required to travel to different locations and had irregular schedules.

67.     Some cashiers also served as gas station attendants with responsibilities including pumping gasoline at full-service pumps; taking payments for gas; cleaning the pumps; cleaning the outside area around the pumps; and performing other miscellaneous duties.

68.     At all times during the term of their respective employment, plaintiffs were "employees" as defined under the NYLL § 651(5), and defendants were "employers" within the meaning of NYLL §§ 2(7), 190(2), 651(6).

69.     At all relevant times, defendants employed each of the plaintiffs.

13

70.     Under defendants' management, plaintiffs were generally required to work 12 hours per day, either from 7 p.m. to 7 a.m. or 7 a.m. to 7 p.m, for a minimum of 6 or 7 days per week.

**II.     DEFENDANTS DID NOT PAY PLAINTIFFS ALL THE WAGES TO WHICH THEY WERE ENTITLED**

71.     During the course of their respective employments, plaintiffs were not compensated and/or were undercompensated by defendants.  Plaintiffs all suffered pervasive wage theft in a variety of forms.

72.     Defendants paid plaintiffs either by lump sums of cash, check, or combinations of both.  All plaintiffs experienced persistent and extended delays in getting paid and those who remained employed by defendants in October 2014 through January 2015 received no payment for hours worked in those months.

73.     As set forth below, plaintiffs suffered wage theft in a variety of forms. Defendants failed to pay plaintiffs the minimum wage for all hours worked; failed to pay plaintiffs for some hours or even weeks and months worked; failed to pay plaintiffs in a timely manner; failed to pay plaintiffs overtime rates for all overtime hours worked; failed to provide required meal breaks; failed to pay plaintiffs spread of hours pay; failed to pay or reimburse some plaintiffs for uniforms and uniform laundering; made illegal deductions from plaintiffs' pay; and failed to provide required notices and wage statements.

**A.     Defendants Did Not Pay Plaintiffs at Least the Minimum Wage for All Hours Worked**

74.     The FLSA and the NYLL require employers to pay at least the statutory minimum wage rate for every hour worked by an employee.  29 U.S.C. § 206; NYLL § 652. During the relevant time period, the federal minimum wage rose from $5.15 per hour to $7.25

14

per hour, and the state minimum wage rose from $5.15 per hour to $8.75 per hour. In addition, the NYLL requires employers to pay the promised wage for each hour worked by an employee. NYLL § 191.

75.    Dividing the amount in weekly wages that defendants paid (without considering illegal deductions) by the total weekly hours plaintiffs' work yielded wage rates ranging from approximately $3.96 to $8 per hour.

76.    Defendants also took illegal deductions from many plaintiffs' wages, which resulted in defendants paying these plaintiffs' wages below the legally required minimum wage.

77.    In addition, despite working extra shifts, some plaintiffs were paid only for their scheduled shifts, and not compensated at all for the additional shift or shifts that they were required to cover.

78.    Although defendants occasionally used scanners or other devices for tracking hours worked, many of the devices often did not work, and defendants would enter times for their employees' hours of work into defendants' computer system.

79.    Starting in October 2014 and continuing through January 2015, those plaintiffs who continued to work for defendants stopped receiving any wages. Some plaintiffs were paid by check during this period, but when those employees attempted to cash the checks, they were rejected for insufficient funds. Thus, none of those plaintiffs received any payment during that period.

80.    In addition, defendants withheld paychecks from a majority of the plaintiffs for the first weeks of employment, claiming that it was a "deposit" for their employment or that those weeks were considered unpaid training. Defendants never reimbursed certain plaintiffs

15

for these paychecks and thus, those plaintiffs were not paid the minimum wage for those pay periods.

81.    None of the plaintiffs received at least the minimum wage for all hours worked for defendants.

82.    Defendants knowingly, willfully, and intentionally failed to provide the minimum wage for all hours worked.

**B.    Defendants Failed to Pay Plaintiffs in a Timely Manner**

83.    The FLSA and the NYLL both require timely payment of wages owed.

84.    Defendants paid plaintiffs on an irregular and untimely basis.  Defendants often waited several weeks or months before they paid plaintiffs wages for hours worked.  For some plaintiffs, defendants withheld their paychecks for several weeks and paid plaintiffs with multiple checks every couple of months.

85.    None of the plaintiffs were paid on a timely basis.

86.    Defendants knowingly, willfully, and intentionally failed to make timely payment of wages.

**C.    Defendants Did Not Pay Plaintiffs Required Overtime Pay**

87.    The FLSA and the NYLL require employers to pay time-and-a-half of the regular rate for each hour worked over 40 hours per week.  29 U.S.C. § 207(a); 29 C.F.R. § 778.109; 12 N.Y.C.R.R. §§ 142-2.2, 146-1.4.

88.    Plaintiffs who received wages exclusively in lump sum cash payments did not receive the applicable overtime rate for hours worked over 40 hours per week.

89.    Plaintiffs who received wages in the form of check were nominally paid an overtime rate, but were not adequately compensated because of illegal deductions taken from

16

their wages, which brought them below the required overtime rate.   Most plaintiffs worked overtime hours for which they were not compensated at all.

90.      Many of the gas stations were open to the public 24 hours a day.

91.      Plaintiffs regularly worked for defendants for 6 or 7 days per week while employed by defendants.

92.      Defendants routinely scheduled plaintiffs to work alternating 12-hour shifts.   An employee would be scheduled to work the morning 12-hour shift, have the evening 12-hour shift off, and be scheduled to return for the next morning's 12-hour shift.

93.      In situations in which a worker was ill or otherwise unable to work and needed to take a day off, the plaintiff who worked the alternate shift at the location would have to stay on duty to cover for the absent worker. Because of this scheduling practice, it was not uncommon for plaintiffs to work three or more 12 hour shifts in a row without relief.

94.      Plaintiffs regularly worked significant overtime hours while employed by defendants.   Some plaintiffs have worked as many as 84 hours a week on a regular basis.

95.      Defendants did not allow plaintiffs to take regular meal or rest breaks.

96.      During the period beginning in October 2014, defendants failed to provide wages for work performed by plaintiffs, including overtime hours. Thus, those plaintiffs who remained employed by defendants starting in October 2014 failed to receive overtime pay for the overtime hours that they routinely worked.

97.      In addition, as set forth above, defendants withheld paychecks from a majority of the plaintiffs' paychecks for the first weeks of employment and never reimbursed plaintiffs for those withheld paychecks, thus failing to pay those plaintiffs the required overtime rate for the overtime hours they worked during those pay periods.

17

98.    Defendants knowingly, willfully, and intentionally failed to pay overtime rates in violation of the FLSA and the NYLL.

99.    In consequence, all of the plaintiffs suffered overtime violations during all or part of their time employed by defendants.

**D.    Defendants Did Not Compensate Plaintiffs with the Required Spread-of-Hours Pay**

100.    Under the NYLL, the "spread-of-hours" is the number of hours from the time that an employee started working on a particular day until the time that he or she stopped working for the day.  NYLL requires that employers pay an extra hour of pay at the minimum wage rate if an employee's shift extends more than 10 hours between start and finish.  12 N.Y.C.R.R. §§ 142-2.4, 2.18, 146-1.6.

101.    Plaintiffs regularly worked more than 10 hours per day.  Throughout their respective employments, the majority of the plaintiffs regularly worked shifts of 12 hours, 7 days a week, routinely working at least 84 hours per week.

102.    Plaintiffs were not paid an additional hour at the minimum wage rate when plaintiffs worked more than 10 hours per day.

103.    None of the plaintiffs were ever paid spread-of-hours pay.

104.    Defendants' failure to pay spread-of-hours pay is a violation of the NYLL.

**E.    Defendants Unlawfully Failed to Reimburse Plaintiffs for Uniform Costs**

105.    NYLL requires employers to reimburse employees for the purchase of a required uniform not later than the time of the next payment of wages.  12 NYCRR §§ 1452-2.5(c), 146-1.7(a), 146-1.8(a).

106.    Defendants required certain plaintiffs to wear a uniform with a logo.   The uniform typically consisted of a specific jacket (costing between $75 to $150) and/or or a shirt

*18*

(costing between $50 to $100).  Defendants deducted the cost of this clothing from plaintiffs' paychecks and required plaintiffs to purchase a new shirt or jacket either every three months or annually.  Plaintiffs would not have worn these clothes or bought them had defendants not required them to do so.

107.    Plaintiffs had to launder the required uniforms at their own expense, which they would not otherwise have had to do.  Defendants never reimbursed plaintiffs for laundering fees.

108.    Plaintiffs who had to purchase uniforms and launder their own expense include Shiva Baniya, Jaya Bhandari, Gyanu Chand, Rajendra Khadka, Kumar Sharma, Santosh Sharma, Angnima Sherpa, Raghubir Sherpa, and Yam Sunuwar.

**F.      Defendants Made Numerous Unlawful Deductions From Plaintiffs' Pay**

109.    Under the FLSA, employees are not required to pay for the cost of any items such as a cash drawer shortage, financial losses due to clients/customers not paying bills, theft, or damages to the employer's property if it reduces their wage below the required minimum wage or overtime compensation.  *See* C.F.R. § 531.35.

110.    *Regardless of its impact on the minimum wage or overtime, the NYLL prohibits* employers from making any deductions from any employee's wages except for those permitted by law, prohibits "kick-backs," and also specifies that "the minimum wage shall not be reduced by expenses incurred by an employee in carrying out duties assigned by an employer."  NYLL §§ 193, 198-b; 12 N.Y.C.R.R. §§ 142-2.10, 146-2.7.

111.    Defendants routinely took unlawful deductions from certain plaintiffs' pay for, among other things, lost inventory, uniforms, and compulsory "rent" for living space at management-owned or controlled housing.

19

112.   Defendants made deductions from certain plaintiffs' wages by requiring plaintiffs to cash their checks with defendants, who then kept whatever deductions they alleged were owed to defendants, and returned the remainder to plaintiffs in cash.

113.   For plaintiffs who were paid in cash, defendants took illegal deductions prior to disbursing payment.

114.   After the deductions, the salary paid by defendants to plaintiffs was insufficient to satisfy defendants' obligation to pay the minimum wage required by the FLSA and the NYLL.

**1.   Defendants Unlawfully Deducted Housing Rent from Plaintiffs' Pay**

115.   Defendants required certain plaintiffs to live in housing that defendants provided in Suffolk County at the Linda Lane House and the Wintergreen House as a precondition of their employment. Defendants thereby controlled plaintiffs' schedules, work, and living conditions. Everyone who lived in the houses worked in some capacity for defendants.

116.   Each house had two or three bedrooms, and it was typical for each bedroom to contain four mattresses on the floor for plaintiffs to share. Residents lived and slept there on a rotating basis in shifts, so the rooms were always full and crowded.

117.   The housing conditions were deplorable— the houses were infested with bedbugs and roaches. In one of the houses, the thermostat was left damaged so that plaintiffs could not control the temperature.

118.   Defendants deducted approximately $375 a month from some plaintiffs' wages as "rent" for living space in the Wintergreen house and Linda Lane house, regardless of whether or not they actually lived there. For most plaintiffs, this deduction was equivalent to just over $1 per hour from their pay, dropping their wages significantly below all applicable minimum wage rates during their employment with defendants.

20

119.    Defendants deducted "rent" from certain plaintiffs who did not live in management's housing and fired employees who refused to live in that housing.  For certain plaintiffs who negotiated with defendants to live elsewhere, defendants still required those plaintiffs to pay the housing fee.  Plaintiffs frequently received a check from defendants, cashed their check, and then had to give $375 back for housing as a condition of employment.

120.    Plaintiffs who suffered illegal deductions for housing include Shiva Baniya, Jaya Bhandari, Prabin Gautam, Rajendra Khadka, Pasang Lama, Kanchha Lama, Dawa Sangpo, Kumar Sharma, Santosh Sharma, Angnima Sherpa, Raghubir Sherpa, and Yam Sunuwar.

### 2.    Defendants Unlawfully Deducted Stolen or Missing Inventory from Plaintiffs' Pay

121.    Upon information and belief, defendants had targets for how much revenue or profit certain stores were expected to generate.  Defendants conducted monthly inventory checks, and when items were missing, damaged, or total revenue was shorter than expected, defendants considered the shortfall "lost" and blamed plaintiffs, deducting the amount defendants believed to be lost from plaintiffs' paychecks.  Defendants also deducted amounts for stolen inventory or damaged appliances within the store from plaintiffs' pay.  Even when the stores were robbed, plaintiffs who were robbed at gunpoint had the stolen money deducted from their pay.

122.    Plaintiffs who suffered such inventory deductions include Shiva Baniya, Jaya Bhandari, Prabin Gautam, Sonam Gyalpo, Chandriswor Kandel, Rajendra Khadka, Pasang Lama, Kanchha Lama, Jang Pal, Dawa Sangpo, Kumar Sharma, Santosh Sharma, Angnima Sherpa, and Yam Sunuwar.

### G.   Notice Violations

123.   Defendants failed to provide plaintiffs with legally adequate wage statements as required by NYLL § 195(3).

124.   Defendants failed to provide plaintiffs with notice of their wage rate and other employment information, as required by NYLL § 195(a).

### H.   Defendants Knowingly and Intentionally Violated Federal and State Employment Law

125.   Defendants' unlawful conduct was widespread, repeated, and willful, and has caused significant damages to plaintiffs.

126.   Defendants were well aware of federal and state employment laws because, among other reasons, defendant Keshtgar is a repeat wage theft offender.

127.   In 2007, the United States Department of Labor found defendant Keshtgar liable for violating the FLSA and required him to pay back-pay to 182 employees at 25 different gas stations in addition to a civil penalty.  Civil Action 07-CV-04470-LdW-AKT, Consent Judgment filed 10/29/07.  Defendant Keshtgar was additionally ordered to advise his employees in English and Spanish of their rights, including their right to engage in protected activities without fear of retaliation.

128.   Defendant Keshtgar was previously sanctioned because his previous employees worked more than 40 hours a week without being compensated and defendants failed to keep accurate records of the hours worked.  In the consent judgment, defendant Keshtgar was prohibited from future violations of the FLSA's minimum wage, overtime, and record-keeping provisions.

129.    Defendants knew or should have known that the nonpayment of minimum wage, overtime pay, and spread-of-hours pay was unlawful and would financially injure plaintiffs.

130.    Defendants knowingly and intentionally took unlawful deductions from plaintiffs' wages.

## III.    DEFENDANTS BREACHED EACH OF PLAINTIFF'S EMPLOYMENT RIGHTS

### Shiva Baniya

131.    Mr. Shiva Baniya worked for defendants as a cashier from about December 2012 to January 9, 2015, at gas stations located at 525 Wicks Road, Brentwood, NY 11717, and 410 Wheeler Road, Hauppauge, NY 11788.

132.    Throughout that period, Mr. Baniya regularly worked shifts of 12 hours, 7 days per week, routinely amassing work weeks of at least 84 hours.  On some occasions, Mr. Baniya worked 36 hours straight.

133.    Defendants paid Mr. Baniya by check and in cash on an irregular basis, typically between every four to seven weeks.

134.    Defendants withheld Mr. Baniya's paycheck for the first three weeks of his employment as a "deposit" for his employment with defendants.  Defendants never reimbursed Mr. Baniya for those paychecks.

135.    During approximately the first five months that Mr. Baniya worked for defendants, defendants paid him the equivalent of about $546 per week, which, divided by the number of hours worked per week, came to $6.50 per hour, without taking deductions into account.  During this time, he was never paid an overtime rate for hours worked over 40 in a week.

136.   Beginning on or about November 8, 2015, defendants stopped paying Mr. Baniya his wages.

137.   Although Mr. Baniya consistently worked an interval of over 10 hours per day, defendants never paid him spread-of-hours pay mandated by state law.

138.   Defendants never provided Mr. Baniya with meal breaks.

139.   Defendants never provided Mr. Baniya with legally adequate wage statements.

140.   Defendants never provided Mr. Baniya with legally required notice of his rate of pay and other information concerning his employment.

141.   Defendants forced Mr. Baniya to live in the Linda Lane House as a pre-condition of his employment and illegally deducted $350 from his monthly wages for rent from December 2012 to December 2013, the equivalent of just under $1 per hour. From January 2013 to December 2014, defendants illegally deducted $375 from his monthly wages for rent, or the equivalent of just over $1 per hour.

142.   Defendants deducted money from Mr. Baniya's wages for broken items and missing inventory, typically every three months. Total deductions for shortages amount to more than $10,000.

143.   Defendants required Mr. Baniya to purchase a new uniform for approximately $100 every three months and a new jacket for approximately $150 annually. He spent approximately $1,250 on his uniforms and jackets. The uniforms had the logos of different gas stations brands, such as Mobil and BP.

144.   Defendants never reimbursed Mr. Baniya for laundering fees for his required uniform.

**Jaya Bhandari**

145.    Mr. Jaya Bhandari worked for defendants as an on-call cashier from approximately January 2011 to October 2013 at gas stations located at 4560 Expressway Drive South, Ronkonkoma, NY 11779, 4909 Sunrise Highway, Bohemia, NY 11716, a Dunkin' Donuts located at 286 Express Drive South, Medford, NY 11763, and several other locations. As an on-call worker, he was directed by defendant Kumar to work at other gas stations depending on staffing needs.

146.    Throughout that period, Mr. Bhandari regularly worked shifts of 12 hours, 7 days per week, routinely amassing 84-hour work weeks.

147.    Defendants paid Mr. Bhandari a wage of approximately $7.25 per hour, not counting deductions, plus an overtime rate.

148.    Defendants paid Mr. Bhandari by check on an irregular basis, typically every month. Sometimes he had to wait two months before he received his wages.

149.    Although Mr. Bhandari consistently worked an interval of over 10 hours per day, defendants never paid him spread-of-hours pay mandated by state law.

150.    Defendants never provided Mr. Bhandari with required meal breaks.

151.    Defendants never provided Mr. Bhandari with legally required notice of his rate of pay and other information concerning his employment.

152.    Defendants forced Mr. Bhandari to live in the Linda Lane House and the Wintergreen House as a precondition for employment and illegally deducted $375 from his monthly wages for rent, the equivalent of just over $1 per hour from his hourly wages.

153.     Defendants regularly deducted between $80 to $700 from Mr. Bhandari's monthly wages for missing inventory.  Total deductions for shortages approximately amount to between $5,000 to $6,000.

154.     Defendants required Mr. Bhandari to purchase a new uniform for approximately $50 on approximately three occasions.  He spent a total of approximately $150 on his uniforms and jackets, which had the Gulf logo on them.

155.     Defendants never reimbursed Mr. Bhandari for laundering fees for his required uniform.

156.     Defendants withheld Mr. Bhandari's paycheck for the first two weeks of employment as a "deposit" for his employment.  Defendants never reimbursed Mr. Bhandari for those withheld paychecks.

**Gyanu Chand**

157.     Ms. Gyanu Chand worked for defendants as a cashier from approximately September 2013 until on or about December 23, 2014 at a gas station located at 410 Wheeler Road, Hauppauge, NY 11788.

158.     Ms. Chand's duties generally included stocking food, food preparation, cleaning the store, and conducting cash register transactions with customers.

159.     The area of the gas station Ms. Chand worked at contained sections for Subway and Dunkin' Donuts, with eating facilities for customers.

160.     Ms. Chand regularly worked 7 days per week, from approximately 6:00 AM until 2:00 PM Monday through Friday, and from approximately 6:00 AM until 6:00 PM on Saturday and Sunday.  Ms. Chand typically worked about 64 hours per week. She occasionally worked shifts of 14 to 16 hours per day.

26

161.    Ms. Chand was paid by check on an irregular basis, approximately once every one or two months.  Checks for approximately six weeks of work were withheld at all times.  Thus, on those intermittent occasions when Ms. Chand was paid, she would not receive a paycheck all of the weeks she had worked.

162.    Ms. Chand was paid the equivalent of approximately $7.25 per hour from approximately September 2013 until December 2013 when she was paid the equivalent of approximately $8 per hour, not counting unreimbursed expenses.

163.    From on or about October 11, 2014 until on or about December 23, 2014, defendants ceased paying wages to Ms. Chand, even though she continued to work approximately 64 hours per week during this time period.

164.    Ms. Chand worked an interval of more than 10 hours per day approximately two days per week and never received spread-of-hours pay as mandated by state law.

165.    Ms. Chand was not provided with regular meal breaks.

166.    Ms. Chand never received a legally adequate statement with payment of her wages.

167.    Ms. Chand was not provided with the legally required notice of her rate of pay and other information concerning her employment.

168.    From on or about October 11, 2014 until on or about December 23, 2014, Ms. Chand received four checks that bounced, costing her approximately $48 in bounced check fees.

169.    Defendants never reimbursed Ms. Chand for the laundering fees for her required uniform, consisting of a hat and a shirt with Subway and Dunkin' Donuts logos.

27

**Ram Kumar Dhakal**

170.    Mr. Ram Kumar Dhakal worked for Defendants as a gas station attendant and cashier from approximately September 14, 2014 to January 2, 2015 on an on-call basis at a gas station located at 4909 Sunrise Highway, Bohemia, NY 11716.  As an on-call worker, he was directed by defendant Kumar to work other gas stations depending on staffing needs.

171.    In the time period from approximately September 27, 2014 to October 27, 2014, Mr. Dhakal regularly worked shifts of 12 hours, 6 days per week, routinely amassing 72-hour work weeks.

172.    In the time period from approximately October 28, 2014, to January 2, 2015, Mr. Dhakal regularly worked shifts of 12 hours, 7 days per week, routinely amassing 84-hour work weeks.

173.    Defendants did not pay Mr. Dhakal for his first week or two of employment, claiming that those first weeks were unpaid training.

174.    In the time period that defendants employed Mr. Dhakal, defendants paid him at the rate of approximately $8 per hour, minus unreimbursed expenses, for only two weeks covering the period of September 28, 2014 to October 10, 2014 with one check in the name of another employee.  He was not always paid an overtime rate for hours worked over 40 in a week.

175.    Beginning on October 10, 2014, defendants stopped paying Mr. Dhakal his wages.

176.    Although Mr. Dhakal consistently worked an interval of over 10 hours per day, defendants never paid him spread-of-hours pay mandated by state law.

177.    Defendants never provided Mr. Dhakal with meal breaks.

28

178.    Defendants never provided Mr. Dhakal with legally adequate wage statements.

179.    Defendants never provided Mr. Dhakal with legally required notice of his rate of pay and other information concerning his employment.

180.    Defendants never reimbursed Mr. Dhakal for transportation expenses he incurred to cover shifts at different gas stations.  These expenses amounted to approximately $80 per week throughout Mr. Dhakal's employment, equivalent to just over $1 per hour.

**Prabin Gautam**

181.    Mr. Prabin Gautam worked as a cashier for defendants from approximately February 2013 to January 9, 2015 at gas stations located at 3329 Sunrise Highway, Islip Terrace, NY 117952, and 525 Wicks Road, Brentwood, NY 11717.

182.    Throughout this period, Mr. Gautam regularly worked shifts of 12 hours, 7 days per week, routinely amassing work weeks of at least 84 hours, but on occasion working as many as 108 hours.

183.    Throughout Mr. Guatam's employment, defendants paid Mr. Guatam on an irregular basis, typically withholding pay for multiple months.

184.    From the start of his employment until on or about February 14, 2014, defendants paid Mr. Gautam in cash.  During this time, defendants paid Mr. Gautam the equivalent of approximately $520 per week, without taking deductions into account, which, if divided by the number of hours worked per week, came to about $6.19 per hour.  Defendants did not pay him an overtime rate for hours worked over 40 in a week.

185.    Beginning on or about February 14, 2014 until on or about November 14, 2014, defendants paid Mr. Gautam by check on an irregular basis.  During this time, defendants paid

29

Mr. Gautam the equivalent of approximately $8 an hour and an overtime rate of approximately
$12 an hour, not taking deductions into account.

186.    Beginning on or about November 14, 2014, defendants stopped paying Mr.
Gautam his wages.

187.    Although Mr. Gautam consistently worked an interval of over 10 hours per day
throughout his employment, defendants never paid him spread-of-hours pay mandated by state
law.

188.    Defendants never provided Mr. Gautam with required meal breaks.

189.    Defendants never provided Mr. Gautam with legally adequate wage statements.

190.    Defendants never provided Mr. Gautam with legally required notice of his wage
rate and other employment information.

191.    Defendants forced Mr. Gautam to live in the Linda Lane House, as a pre-
condition of employment and illegally deducted $375 from his monthly wages, or the equivalent
of about just over $1 per hour.

192.    Defendants also deducted money from Mr. Gautam's wages for broken items and
missing inventory.

**Sonam Gyalpo**

193.    Mr. Sonam Gyalpo worked for defendants as an attendant and cashier, for most
of the period from approximately November 2013 to January 2015, first, at a gas station located
at 2033 Middle Country Road, Centereach, NY 11720 and then on an on-call basis until the last
few weeks of January 2015 when he worked at the gas station at 5665 Sunrise Highway,
Holbrook NY 11741. As an on-call worker, he was directed by defendant Kumar to work other
*gas stations depending on staffing needs.*

30

194.     Throughout this period, Mr. Gyalpo regularly worked shifts of 12 hours, often 6 to 7 days per week, routinely amassing 72 to 84-hour work weeks.  On some occasions, Mr. Gyalpo worked 36 hours straight.

195.     Defendants paid Mr. Gyalpo by cash on an irregular basis, typically every three to four weeks.

196.     Mr. Gyalpo was promised a wage of $7.25 per hour. Throughout the first three weeks or so that Mr. Gyalpo worked for defendants, defendants paid him the equivalent of approximately $480 or $490 per week, which, if divided by the number of hours worked per week, came to approximately $5.71 to $5.83 per hour, without taking deductions into account.

197.     After that, Mr. Gyalpo was paid intermittently and not for every week he worked. He was never paid an overtime rate for hours worked over 40 in a week.

198.     Beginning on or about August 2014, Defendants stopped paying Mr. Gyalpo his wages.  He left defendant Keshtgar's Centereach gas station for a few weeks in approximately December 2014 and then returned to work for a few weeks at the Holbrook gas station in approximately January 2015.

199.     Although Mr. Gyalpo consistently worked an interval of over 10 hours per day, defendants never paid him spread-of-hours pay mandated by state law.

200.     Defendants never provided Mr. Gyalpo with required meal breaks.

201.     Defendants never provided Mr. Gyalpo with legally adequate wage statements.

202.     Defendants never provided Mr. Gyalpo with legally required notice of his rate of pay and other information concerning his employment.

203.     Defendants deducted money from Mr. Gyalpo's wages for money shortages in the cash register and inventory.

204.    Defendants never reimbursed Mr. Gyalpo for transportation expenses he incurred to cover shifts at different gas stations. These expenses amounted to approximately $30 per week throughout Mr. Gyalpo's employment.

**Chandriswor Kandel**

205.    Mr. Chandriswor Kandel worked for defendants as an attendant and cashier from approximately April 15, 2014 until January 9, 2015, at a gas station located at 3239 Sunrise Highway, Islip Terrace, NY 11752.

206.    Mr. Kandel regularly worked shifts of 12 hours, 7 days per week, from 7:00 pm until 7:00 am. He routinely worked approximately 84-hour work weeks.

207.    Defendants paid Mr. Kandel by check on an irregular basis, typically every three to seven weeks.

208.    From approximately October 18, 2014 until January 9, 2015, defendants did not pay Mr. Kandel his wages.

209.    Although Mr. Kandel consistently worked an interval of over 10 hours per day, defendants never paid him spread-of-hours pay as mandated by state law.

210.    Defendants never provided Mr. Kandel with required meal breaks.

211.    Defendants never provided Mr. Kandel with legally adequate wage statements.

212.    Defendants never provided Mr. Kandel with legally required notice of his rate of pay and other information concerning his employment.

213.    Defendants deducted approximately $200 from Mr. Kandel's pay after cash was stolen from the register of the gas station store during a robbery in which Mr. Kandel was held at gunpoint.

**Rajendra Khadka**

214.    Mr. Rajendra Khadka worked for defendants as a cashier from on or about March 2014 to January 14, 2015 at a gas station located at 525 Wicks Road, Brentwood, NY 11717.

215.    Throughout that period, Mr. Khadka regularly worked shifts of 12 hours, 7 days per week, routinely amassing 84-hour work weeks.

216.    Defendants paid Mr. Khadka in cash on an irregular basis, typically every five to ten weeks.

217.    Defendants initially paid Mr. Khadka the equivalent of a wage of approximately $605 per week, or, if divided by the number of hours he worked per week, came to the equivalent of approximately $7.20 per hour, without taking deductions into account.  After six months, in approximately September 2014, defendants started to pay Mr. Khadka the equivalent of a slightly higher wage of approximately $625 per week, which, if divided by the number of hours he worked per week, came to approximately $7.44 per hour, if deductions are not taken into account.  He was never paid an overtime rate for hours worked over 40 in a week.

218.    Beginning on November 20, 2014, defendants stopped paying Mr. Khadka his wages.

219.    Although Mr. Khadka consistently worked an interval of over 10 hours per day, defendants never paid him spread-of-hours pay mandated by state law.

220.    Defendants never provided Mr. Khadka with required meal breaks.

221.    *Defendants never provided Mr. Khadka with wage statements.*

222.    Defendants never provided Mr. Khadka with legally required notice of his rate of pay and other information concerning his employment.

33

223.    Defendants forced Mr. Khadka to live in the Linda Lane House as a precondition for employment and illegally deducted $375 from his monthly wages for rent, the equivalent of about just over $1 per hour.

224.    Defendants deducted money from Mr. Khadka's wages for broken items and missing inventory, typically every three months.  Total deductions for shortages amount to approximately $600.

225.    Defendants required Mr. Khadka to purchase a new uniform for $100 every three months and a new jacket for $150 annually.  He spent approximately $450 on his uniforms and jackets.  The uniforms had the Mobil logo on it.

**Chitra Khatri**

226.    Mr. Chitra Khatri worked for defendants from on or about January 2013 to January 23, 2015 at a gas station located at 5665 Sunrise Highway, Holbrook NY 11741 as a cashier.

227.    Throughout that period, Mr. Khatri regularly worked shifts of 12 hours, 7 days per week, routinely amassing work weeks of at least 84 hours.

228.    Defendants paid Mr. Khatri by check on an irregular basis.

229.    Beginning on or about November 15, 2014, defendants stopped paying Mr. Khatri his wages.

230.    Although Mr. Khatri consistently worked an interval of over 10 hours per day, defendants never paid him spread-of-hours pay mandated by state law.

231.    Defendants never provided Mr. Khatri with required meal breaks.

232.    Defendants never provided Mr. Khatri with a legally adequate statement with payment of his wages.

34

233.    Defendants never provided Mr. Khatri with legally required notice of his wage rate and other employment information.

**Kanchha Lama**

234.    Mr. Kanchha Lama worked for defendants as a cashier from on or about February 2013 to January 16, 2015 at a gas station located at 315 Patchogue Road, Port Jefferson, NY 11776.

235.    Throughout that period, Mr. K. Lama regularly worked shifts of 12 hours, 7 days per week, routinely amassing work weeks of at least 84 hours.

236.    Defendants paid Mr. K. Lama by cash on an irregular basis.  Sometimes he had to wait up to three months before he received his wages.

237.    Throughout the period he worked for defendants, Mr. K. Lama was generally paid the equivalent of approximately $611 per week, which, divided by the number of hours worked per week, came to approximately $7.27 per hour, without taking any deductions into account.  He was never paid an overtime rate for hours worked over 40 in a week.

238.    Beginning on or about October 4, 2014, defendants stopped paying Mr. K. Lama his wages.

239.    Although Mr. K. Lama consistently worked an interval of over 10 hours per day, defendants never paid him spread-of-hours pay mandated by state law.

240.    Defendant never provided Mr. K. Lama with required meal breaks.

241.    Defendant never provided Mr. K. Lama with wage statements.

242.    Defendants forced Mr. K. Lama to live in the Linda Lane House and the Wintergreen House, as a precondition of his employment and illegally deducted $375 from his monthly wages for rent, the equivalent of approximately just over $1 per hour.  This dropped

35

Mr. K. Lama's wages substantially below all applicable minimum wage rates during his time working for defendants.

243.     Defendants regularly deducted money from Mr. K. Lama's wages for inventory that was missing. Deductions for shortages amounted to approximately $50 per month, the equivalent of approximately $0.14 per hour, and were made when Mr. K. Lama received his wages.

244.     Defendants withheld Mr. K. Lama's paychecks for the first two weeks of his employment as a "deposit" for his employment with defendants. Defendants never reimbursed Mr. K. Lama for those paychecks.

**Pasang Lama**

245.     Mr. Pasang Lama worked for defendants as a cashier from approximately 2010 to February 19, 2015, at gas stations located at 1980 Broadcast Plaza, Merrick, NY 11566, 315 Patchogue Road, Port Jefferson, NY 11779, and 1395 Veterans Memorial Highway, Islandia, NY 11749. He worked regular, full-time shifts from January 2010 onward.

246.     Throughout the period from January 2010 onward, Mr. P. Lama regularly worked shifts of 12 hours, 7 days per week, routinely amassing 84-hour work weeks.

247.     Defendants paid Mr. P. Lama by both check and cash on an irregular basis. Defendants gave Mr. P. Lama his paychecks at random with no consistent pattern of pay. He sometimes received pay once every two to three weeks, or every five weeks. As a result, he *always was owed outstanding checks. For example, after 10 weeks of working, he would* receive 3 checks at once as compensation for 6 weeks of work, but would not be provided with 2 additional paychecks for the remaining 4 weeks of work.

36

248.    Mr. P. Lama occasionally asked defendant Kumar to provide him with his outstanding paychecks. In response, defendant Kumar threatened to fire Mr. P. Lama.

249.    Defendants generally paid Mr. P. Lama a wage of approximately $7.25 per hour until December 31, 2013, and approximately $8 per hour thereafter, without taking deductions into account.

250.    Beginning on November 1, 2014, defendants stopped paying Mr. P. Lama his wages.

251.    Although Mr. P. Lama consistently worked an interval of over ten hours per day, defendants never paid him spread-of-hours pay mandated by state law.

252.    Defendants never provided Mr. P. Lama with regular meal breaks.

253.    Defendants never provided Mr. P. Lama with legally adequate wage statements.

254.    Defendants never provided Mr. P. Lama with legally required notice of his pay rate or other employment information.

255.    Defendants withheld Mr. P. Lama's paycheck for the first two weeks of employment as a "deposit" for his employment. Mr. P. Lama was never reimbursed these paychecks.

256.    Defendants illegally deducted $375 from Mr. P. Lama's monthly wages, or the equivalent of just over $1 per hour, from January 2010 to October 2014, for housing that he did not live in. In November 2014, defendants retroactively withheld the equivalent of two to three months' rent from Mr. P. Lama's pay.

257.    Defendant Kumar forced Mr. P. Lama to pay a deduction rate in cash for every half hour that he arrived late to his shifts. The penalty rate was calculated at half the applicable overtime rate relative to the minimum wage in effect at the time per half hour.

37

258.    Mr. P. Lama incurred fees for checks, written by defendants, that bounced when he tried to cash them. Fees for bounced checks amounted to $12 per check, or $48 total.

259.    Defendants deducted money from Mr. P. Lama's salary for cash register shortages.  Defendant Kumar would deduct between approximately $20 and $50, usually between once every two weeks and once a month.

**Jang Pal**

260.    Mr. Jang Pal worked for defendants as a cashier from approximately December 2010 to December 23, 2014, at a gas station located at 410 Wheeler Road, Hauppauge, NY 11788.

261.    From approximately December 2010 to December 2011, Mr. Pal regularly worked shifts of 12 hours, 7 days per week, routinely amassing 84-hour work weeks.  From January 2012 to December 23, 2014, Mr. Pal worked shifts of 12 hours, 6 days per week, routinely amassing 72-hour work weeks.

262.    Defendants paid Mr. Pal by check on an irregular basis, typically every three to six weeks.

263.    Defendants paid Mr. Pal the equivalent of $7.25 per hour, not counting deductions, from when on or about December 2010 until December 2013.

264.    Beginning on or about October 11, 2014, defendants stopped paying Mr. Pal his wages.

265.    Mr. Pal incurred fees for four checks, written by defendants, that bounced when he tried to cash them. Fees for bounced checks amounted to $12 per check, or $48 total.

266.    Although Mr. Pal consistently worked an interval of over ten hours per day, defendants never paid him spread-of-hours pay mandated by state law.

267.    Defendants never provided Mr. Pal with meal breaks.

268.    Defendants never provided Mr. Pal with legally adequate wage statements.

269.    Defendants never provided Mr. Pal with legally required notice of his rate of pay and other information concerning his employment.

270.    Defendants deducted money from Mr. Pal's wages for broken items and missing inventory, typically every three months.    Total deductions for shortages amount to approximately $330.

**Dawa Sangpo**

271.    Mr. Dawa Sangpo worked for defendants as a cashier from on or about January 1, 2010 to January 17, 2015, primarily at gas stations located at 4560 Expressway Drive South, Ronkonkoma, NY 11779, 525 Wicks Road, Brentwood, NY 11717, and 360 Wheeler Road, Hauppauge, NY 11788.

272.    Throughout that period, Mr. Sangpo regularly worked shifts of 12 hours, 7 days per week, routinely amassing 84-hour work weeks.

273.    *Defendants paid Mr. Sangpo by check and on an irregular basis, generally every* month or two months.    Sometimes he had to wait up to three months before he received his wages.

274.    When they paid him, defendants paid Mr. Sangpo the equivalent of wages of approximately $7.25 per hour, without taking into account any deductions, plus an overtime rate.

275.    Beginning on or about October 1, 2014, defendants stopped paying Mr. Sangpo his wages.

39

276.    Although Mr. Sangpo consistently worked an interval of over ten hours per day, defendants never paid him spread-of-hours pay mandated by state law.

277.    Defendants never provided Mr. Sangpo with required meal breaks.

278.    Defendants never provided Mr. Sangpo with legally adequate wage statements.

279.    Defendants made Mr. Sangpo live in the Linda Lane House as a precondition of employment with them and they illegally deducted $375, the equivalent of about just over $1 per hour, from his monthly wages for rent.

280.    Defendants regularly deducted money from Mr. Sangpo's wages for inventory that was missing.

281.    Defendants withheld Mr. Sangpo's paychecks for the first two weeks of his employment as a "deposit" for his employment.  Defendants never reimbursed Mr. Sangpo for those paychecks.

**Kumar Sharma**

282.    Mr. Kumar Sharma worked as a cashier for defendants from on or about November 2005 to January 7, 2015 at a gas station located at 2033 Middle Country Road, Centereach, New York 11720 and at other locations.  Twice during this period, once in approximately 2006 and once in approximately 2013, Mr. K. Sharma did not work for defendants for between two to three months at a time.

283.    Mr. K. Sharma regularly worked shifts of 12 hours for defendants, 7 days per week, routinely amassing 84-hour work weeks.

284.    For the first 14 months or so, defendants paid Mr. K. Sharma in cash on an irregular basis.  He received the equivalent of approximately $400-$420 per week, or approximately $4.76-$5 per hour, before taking deductions into account.  However, during that

period, defendants would deduct from his pay about $400-$500 per month, according to a list of supposedly missing inventory that defendants would maintain, in addition to monthly deductions for rent.  When paying Mr. K. Sharma during that time, defendant Sudheer Kumar would offer cash payments but would then take deductions out before handing over the cash.

285.    After early 2007, Mr. K. Sharma was paid by check on an irregular basis. Defendants paid Mr. K. Sharma for approximately 4 to 5 weeks of work once every 3 months. As such, defendants withheld checks for approximately 9 weeks of work at all times.

286.    Toward the beginning of this period, according to the pay stubs he received, defendants paid Mr. K. Sharma $6.50 per hour.  The rate was increased to $7.25 per hour and then to $8 per hour.

287.    From time to time, Mr. K. Sharma worked shifts of 13-14 hours, but he was not paid for the extra hours of work.

288.    During one week, Mr. K. Sharma's regular shift replacement became unavailable for medical reasons, and Mr. K. Sharma was forced to work approximately 111 hours straight. Afterward, defendant Sudheer Kumar accused Mr. K. Sharma of sleeping on the job and did not pay him for that week.

289.    Beginning on or about October 4, 2014, defendants stopped paying Mr. K. Sharma his wages.

290.    Although Mr. K. Sharma consistently worked an interval of more than ten hours per day, defendants never paid him spread-of-hours pay mandated by state law.

291.    Defendants never provided Mr. K. Sharma with required meal breaks.

292.    Defendants never provided Mr. K. Sharma with legally adequate wage statements.

293.    Defendants never provided Mr. K. Sharma with legally required notice of pay rates and other employment information.

294.    Defendants forced Mr. K. Sharma to live in a house located at the Wintergreen House, as a precondition of employment and deducted $375 from his monthly wages for rent, the equivalent of about just over $1 per hour.  Even when Mr. K. Sharma moved out of the house for two years, from 2012 to 2014, defendants continued to deduct this amount from his pay.

295.    Even after they started paying him by check, defendants continued to deduct money from Mr. K. Sharma's wages for items that were broken or inventory that was missing. Defendants would cash his checks and withhold a portion of the cash for these deductions.

296.    Defendants regularly deducted money from Mr. K. Sharma's wages for things that were stolen from the gas station store.

297.    Defendants deducted approximately $600 from Mr. K. Sharma's wages because of a robbery that occurred at the gas station store.

298.    On several occasions, defendants deducted from Mr. K. Sharma's pay $60 for a shirt and $75 for a jacket that Mr. K. Sharma was required to wear as a uniform.

299.    Defendants never reimbursed Mr. K. Sharma for laundering fees for his required uniform, consisting of a shirt and jacket with the Mobil logo.

300.    Defendants withheld Mr. K. Sharma's paychecks for the first two weeks of employment as a "deposit" for his employment.  Defendants never reimbursed Mr. K. Sharma for these paychecks.

42

**Santosh Sharma**

301.    Mr. Santosh Sharma worked for defendants as a cashier from approximately September 2012 until January 2015 at a gas station located at 2033 Middle County Road, Centereach, New York 11720.

302.    Mr. S. Sharma regularly worked shifts of approximately 12 hours per day, 7 days per week.  He routinely worked approximately 84-hour work weeks, but on occasions worked as many as 108 hours.

303.    Defendants generally paid Mr. S. Sharma by check on an irregular basis, approximately once every two months.

304.    Defendants generally paid Mr. S. Sharma a wage of approximately $8 per hour, not taking into account deductions, plus an overtime rate.

305.    Beginning on or about August 2014 until the end of his employment in January 2015, Mr. S. Sharma received multiple checks from defendants, but could not cash these checks due to the gas station's bankruptcy.

306.    Mr. S. Sharma has accrued fees from bounced checks that defendants gave to him.

307.    Although Mr. S. Sharma consistently worked an interval of over ten hours per day, defendants never paid him spread-of-hours pay mandated by state law.

308.    Defendants never provided Mr. S. Sharma with required meal breaks or breaks of any kind.

309.    Defendants never provided Mr. S. Sharma with legally adequate wage statements.

43

310.    Defendants never provided Mr. S. Sharma with legally required notice of his rate of pay and other information concerning his employment.

311.    On one occasion, defendants required Mr. S. Sharma to sign over checks worth approximately $2,250 as a condition of re-hiring his father, Mr. Kumar Sharma, who was alleged to be late on "rent" payments for living space.

312.    Defendants deducted approximately $1,000 from Mr. S. Sharma's wages for missing inventory items.

313.    Mr. S. Sharma was required to purchase a Mobil gas station jacket for about $100 as part of his employment uniform.

314.    Mr. S. Sharma was not reimbursed by defendants for laundering fees for his required uniform.

**Angnima Sherpa**

315.    Mr. Angnima Sherpa worked for defendants as a cashier from on or about November 2013 to January 15, 2015 at a gas station located at 701 Montauk Highway, Bay Shore, NY 11706.

316.    Mr. A. Sherpa regularly worked shifts of 12 hours, 7 days per week, routinely amassing work weeks of at least 84 hours. On several occasions Mr. A. Sherpa worked about 36 hours continuously.

317.    Defendants paid Mr. A. Sherpa on an irregular basis, approximately once every three months. Typically, when Mr. A. Sherpa was paid, defendants paid him for only three weeks of work at a time. Mr. A. Sherpa therefore generally received three checks for three weeks of work once every three months, even though he worked for all twelve weeks. Thus, on

44

those intermittent occasions when Mr. Sherpa was paid, he would not receive a paycheck for all of the weeks he had worked.

318.    From the start of his employment in November of 2013, Mr. A. Sherpa was paid in cash at the equivalent of a flat weekly rate of approximately $605 per week, or approximately $7.02 per hour, without taking into account deductions.  Beginning in approximately May of 2014, Mr. A. Sherpa was paid in check at the equivalent of a flat weekly rate of approximately $640 per week, or approximately $7.62 per hour, not counting deductions.  Mr. A. Sherpa was paid these flat weekly rates regardless of the amount of hours worked.

319.    Beginning on or about November 1, 2014, defendants stopped paying Mr. A. Sherpa his wages.

320.    Mr. A. Sherpa was not paid an overtime rate for hours worked over 40 in a week.

321.    Although Mr. A. Sherpa consistently worked an interval of over 10 hours per day, defendants never paid him spread-of-hours pay mandated by state law.

322.    Defendants never provided Mr. A. Sherpa with meal breaks.

323.    Defendants never provided Mr. A. Sherpa with legally adequate wage statements.

324.    Defendants never provided Mr. A. Sherpa with legally required notice of wage rates or other employment information.

325.    Throughout Mr. A. Sherpa's employment, defendants forced Mr. Sherpa to live in the Linda Lane House as a pre-condition of employment and illegally deducted $375 from his monthly wages.  Defendants withheld $375 from Mr. A. Sherpa's pay every month before giving it to him, the equivalent of just over $1 per hour.

326.    Defendants routinely deducted money from Mr. A. Sherpa's wages for missing inventory, in the amount of approximately $50 to $100 per month.

327.    On one occasion, defendants deducted money from Mr. A. Sherpa's wages in the amount of $400 because the store had been robbed.

328.    Mr. A. Sherpa was required to wear a uniform, consisting of a shirt that said "Gulf" on it. Defendants deducted approximately $60 from Mr. A. Sherpa's pay for the shirt.

329.    Defendants never reimbursed Mr. A. Sherpa for laundering fees for his required uniform.

**Raghubir Sherpa**

330.    Mr. Raghubir Sherpa worked for defendants as an attendant and cashier from on or about September 2009 to July 26, 2013, except for two to three months during that time. He worked for defendants at various gas stations, including ones located at 525 Wicks Road, Brentwood, NY 11717, 4560 Expressway Drive South, Ronkonkoma, NY 11779, and 360 Wheeler Road, Hauppauge, NY 11788.

331.    Throughout the period he worked for defendants, Mr. R. Sherpa regularly worked shifts of 12 hours, 7 days per week, routinely amassing work weeks of at least 84 hours. He sometimes worked 24 hours — and even 36 hours — in a row when defendant Kumar told him that there was no one available to replace him.

332.    Defendants paid Mr. R. Sherpa by check, cash, or a combination of the two, and they paid him on an irregular basis, typically every few weeks. Sometimes he had to wait one month before he received his wages. He would get paid only after repeatedly requesting payment from defendant Kumar and even then, defendants would not pay him for every week he had worked. If defendants failed to pay Mr. R. Sherpa for a month, for example, defendant Kumar would typically bring several checks in response to Mr. R. Sherpa's requests for payment, but he would only hand out a couple of those checks and hold onto the other ones.

46

Defendant Kumar would give out some cash if Mr. R. Sherpa and his co-workers expressed urgency in their need for payment.

333.    When defendants paid in cash, Mr. R. Sherpa was paid the equivalent of approximately $450 per week, which, if divided by the number of hours worked per week, came to the equivalent of between $5.36 and $5.95 per hour.

334.    Mr. R. Sherpa understood his rate of pay to be approximately $6.50 per hour initially, and later approximately $7 per hour, and then approximately $8 per hour.

335.    Defendants did not pay Mr. R. Sherpa an overtime rate for hours worked over 40 in a week.

336.    Although Mr. R. Sherpa consistently worked an interval of over 10 hours per day, defendants never paid him spread-of-hours pay mandated by state law.

337.    Defendants never provided Mr. R. Sherpa with required meal breaks.

338.    Defendants never provided Mr. R. Sherpa with legally adequate wage statements.

339.    Defendants never provided Mr. R. Sherpa with legally required notice of his rate of pay and other information concerning his employment.

340.    Defendants illegally deducted approximately $250, and later approximately $375, from Mr. R. Sherpa's monthly wages for housing that he did not live in. The deduction amount increased approximately two years into his employment.

341.    Defendants deducted money from Mr. R. Sherpa's salary for cash register shortages. Total deductions for shortages amount to over $100.

342.    Defendants withheld Mr. R. Sherpa's paycheck for the first two weeks of employment as a "deposit" for his employment.

47

343. Defendants never reimbursed Mr. R. Sherpa for laundering fees for his required uniform shirts, which he was required to wear after the first year of his employment. The uniforms had the logos of different gas stations brands, such as Mobil, Shell, and Gulf.

**Sanil Sikhrakar**

344. Mr. Sanil Sikhrakar worked as a cashier for defendants from on or about March 1, 2013 to early January, 2015 at a gas station located at 5665 Sunrise Highway, Holbrook, NY 11741.

345. Throughout that period, Mr. Sikhrakar regularly worked shifts of 12 hours, 7 days per week, routinely amassing work weeks of at least 84 hours.

346. Defendants paid Mr. Sikhrakar by check on an irregular basis, typically every month or two months.

347. Beginning on or about November 15, 2014, defendants stopped paying Mr. Sikhrakar his wages.

348. Although Mr. Sikhrakar consistently worked an interval of over ten hours per day, defendants never paid him spread-of-hours pay mandated by state law.

349. Defendants never provided Mr. Sikhrakar with required meal breaks.

350. Defendants never provided Mr. Sikhrakar with legally adequate wage statements.

351. Defendants never provided Mr. Sikhrakar with legally required notice of his wage rate or other employment information.

352. Defendants withheld Mr. Sikhrakar's paychecks for the first three to four weeks of employment as a "deposit" for his employment. Defendants never reimbursed Mr. Sikhrakar these paychecks.

48

**Yam Sunuwar**

353.    Mr. Yam Sunuwar worked for defendant as a cashier from on or about September 2006 to January 14, 2015 at a gas station located at 286 Express Drive South, Medford, NY 11763.

354.    Throughout that period, Mr. Sunuwar regularly worked shifts of 12 hours, 7 days per week, routinely amassing 84-hour work weeks.

355.    Defendants paid Mr. Sunuwar in cash on an irregular basis, typically every two to three months. Sometimes he had to wait four months before he received his wages.

356.    Defendants paid Mr. Sunuwar the equivalent of a wage of between approximately $575 per week and $607 per week, which, if divided by the number of hours worked per week, came to the equivalent of between approximately $6.85 per hour and $7.22 per hour. He was never paid an overtime rate for hours worked over 40 in a week, not counting deductions.

357.    Beginning on or about November 14, 2014, defendants stopped paying Mr. Sunuwar his wages.

358.    Although Mr. Sunuwar consistently worked an interval of over ten hours per day, defendants never paid him spread-of-hours pay mandated by state law.

359.    Defendants never provided Mr. Sunuwar with meal breaks.

360.    Defendants never provided Mr. Sunuwar with legally required notice of his rate of pay and other information concerning his employment.

361.    Defendants forced Mr. Sunuwar to live in the Wintergreen House as a precondition for employment and illegally deducted $375 from his monthly wages for rent, the

49

equivalent of about just over $1 per hour. This deduction dropped Mr. Sunuwar's wages substantially below the minimum wage for all applicable periods he worked for defendants.

362. Defendants regularly deducted between approximately $50 to $160 from Mr. Sunuwar's wages for missing inventory. Mr. Sunuwar also made approximately four payments of approximately $250 for a broken cash register, totaling approximately $1,000.

363. Defendants withheld Mr. Sunuwar's paychecks for the first two weeks of employment as a "deposit" for his employment. Defendants never reimbursed Mr. Sunuwar for those withheld paychecks.

364. Defendants required Mr. Sunuwar to purchase a new uniform with a Gulf logo on it, for approximately $50 every two to three years. He spent a total of approximately $150 on his uniforms.

365. Defendants never reimbursed Mr. Sunuwar for laundering fees for his required uniform.

## DEMAND FOR JURY TRIAL

366. Pursuant to Rule 38 of the Federal Rules of Civil Procedure, plaintiffs demand trial by jury for all issues so triable.

## CLAIMS FOR RELIEF

## FIRST CLAIM FOR RELIEF

### VIOLATION OF FLSA — MINIMUM WAGE
(BROUGHT ON BEHALF OF ALL PLAINTIFFS)

367. Plaintiffs repeat and reallege all allegations of the preceding paragraphs as if set forth in full.

368.    The FLSA provides that employers engaged in commerce shall pay employees the applicable minimum hourly wage for every hour worked by an employee. 29 U.S.C § 206(a).

369.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206 shall be liable to the employee or employees affected in the amount of their unpaid compensation, and in an additional equal amount as liquidated damages, as well as fees and costs. 29 U.S.C. § 216(b).

370.    Defendants failed to pay plaintiffs the minimum wage rate for every hour they worked.

371.    Defendants' failure to pay plaintiffs the minimum wage rate was willful and not in good faith.

### SECOND CLAIM FOR RELIEF

### VIOLATION OF FLSA — OVERTIME PAY
#### (BROUGHT ON BEHALF OF ALL PLAINTIFFS)

372.    Plaintiffs repeat and reallege all allegations of the preceding paragraphs as if set forth in full.

373.    The FLSA provides that no covered employer shall permit a covered employee to work longer than 40 hours each workweek unless such employee receives compensation for each hour worked in excess of 40 hours at a rate not less than one and one-half times the regular rate at which he or she is employed. 29 U.S.C. § 207(a).

374.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 207 shall be liable to the employee or employees affected in the amount of their unpaid

51

overtime compensation, and in an additional equal amount as liquidated damages, as well as fees and costs. 29 U.S.C. § 216(b).

375.     Defendants routinely failed to pay plaintiffs for hours they worked in excess of 40 hours per week.

376.     Defendants' failure to pay plaintiffs their overtime pay violated the FLSA.

377.     Defendants' failure to pay plaintiffs their overtime pay was willful and not in good faith.

### THIRD CLAIM FOR RELIEF

### VIOLATION OF NYLL — MINIMUM WAGE
#### (BROUGHT ON BEHALF OF ALL PLAINTIFFS)

378.     Plaintiffs repeat and reallege all allegations of the preceding paragraphs as if set forth in full.

379.     The NYLL provides for a minimum hourly wage for covered employees in New York State.  NYLL § 652; 12 NYCRR §§ 142-2.1, 146-1.2.

380.     Pursuant to NYLL § 198.1-a and § 663, an employer who fails to pay the minimum wage rate as required by the Minimum Wage Act shall be liable, in addition to the amount of any underpayments, for liquidated damages for underpayments found to be due the employee, and pre-judgment interest, fees and costs.

381.     Defendants' failure to pay plaintiffs the minimum wage rate violated the NYLL.

382.     Defendants' failure to pay plaintiffs the minimum wage rate was willful and not in good faith.

## FOURTH CLAIM FOR RELIEF:

### VIOLATION OF NYLL — OVERTIME PAY
(BROUGHT ON BEHALF OF ALL PLAINTIFFS)

383.   Plaintiffs repeat and reallege all allegations of the preceding paragraphs as if set forth in full.

384.   Tracking the FLSA, NYLL Article 19 and the regulations promulgated thereunder provide that an employer will pay an employee one-and-a-half times his or her regular rate for hours worked over 40 in a week.  12 NYCRR §§ 142-2.2 and 146-1.4.

385.   Pursuant to NYLL §§ 198.1-a and 663, an employer who fails to pay overtime required by the Minimum Wage Act shall be liable, in addition to the amount of any underpayments, for liquidated damages for such underpayments found to be due the employee, and pre-judgment interests, fees and costs. 12 N.Y.C.R.R. § 142-2.2.

386.   Defendants routinely failed to pay plaintiffs for hours they worked in excess of 40 hours per week.

387.   Defendants' failure to pay plaintiffs their overtime pay violated the NYLL.

388.   Defendants' failure to pay plaintiffs their overtime pay was willful and not in good faith.

## FIFTH CLAIM FOR RELIEF

### VIOLATION OF NYLL — SPREAD-OF-HOURS PAY
(BROUGHT ON BEHALF OF ALL PLAINTIFFS)

389.   Plaintiffs repeat and reallege all allegations of the preceding paragraphs as if set forth in full.

390.   Employers are required to pay an extra hour's pay for every day that an employee works an interval in excess of ten hours pursuant to NYLL §§ 190, et seq., and §§

650, et seq., and the New York State Department of Labor regulations, 12 N.Y.C.R.R. §§ 142-2.4, 2.18, 146-1.6.

391.    Defendants failed to pay plaintiffs an extra hour's pay at the minimum wage rate for every day that plaintiffs worked an interval in excess of ten hours.  Pursuant to NYLL § 198.1-a and § 663, an employer who fails to pay the minimum wage rate as required by the Minimum Wage Act shall be liable, in addition to the amount of any underpayments, for liquidated damages for underpayments found to be due the employee, and pre-judgment interest, fees and costs.

392.    Defendants' failure to pay plaintiffs spread-of-hours pay was willful and not in good faith.

### SIXTH CLAIM FOR RELIEF

### VIOLATION OF FLSA — TIMELY PAYMENT OF WAGES/DELAY
#### (BROUGHT ON BEHALF OF ALL PLAINTIFFS)

393.    Plaintiffs repeat and reallege all allegations of the preceding paragraphs as if set forth in full.

394.    The FLSA includes a "prompt payment" requirement and requires that all workers shall be "[generally] paid on the regular payday for the period in which such workweek ends" and in "may not be delayed for a period longer than is reasonably necessary to compute and arrange for payment of the amount due." 29 C.F.R. § 778.106, 29 C.F.R. § 790.21(b).

395.    Defendants failed to pay plaintiffs in accordance with 29 U.S.C. § 778.106.

396.    The FLSA provides that any employer who violates the provisions of 29 U.S.C. § 206  or 207 shall be liable to the employee or employees affected in the amount of

compensation that was not paid when due, and in an additional equal amount as liquidated damages, as well as fees and costs. 29 U.S.C. § 216(b).

397.   Defendants' failure to pay plaintiffs in a timely manner was willful and not done in good faith.

### SEVENTH CLAIM FOR RELIEF

### VIOLATION OF NYLL — TIMELY PAYMENT OF WAGES
#### (BROUGHT ON BEHALF OF ALL PLAINTIFFS)

398.   Plaintiffs repeat and reallege all allegations of the preceding paragraphs as if set forth in full.

399.   NYLL § 191 requires that all "manual" workers shall be paid weekly and not later than seven calendar days after the end of the week in which the wages are earned and that all "clerical and other workers" shall be paid not less frequently than semi-monthly on regular pay days designated in advance by the employer.

400.   Defendants failed to pay plaintiffs in accordance with NYLL § 191.

401.   Pursuant to NYLL § 198.1-a, an employer who fails to pay wages timely as required by NYLL § 191 shall be liable, in addition to the amount of any underpayments, for liquidated damages for underpayments found to be due the employee, and pre-judgment interest, fees and costs.

402.   Defendants' failure to pay plaintiffs in a timely manner was willful and not done in good faith.

## EIGHTH CLAIM FOR RELIEF

### VIOLATION OF NYLL — LAUNDERING COSTS FOR UNIFORMS
**(BROUGHT ON BEHALF OF SHIVA BANIYA, JAYA BHANDARI, GYANU CHAND, RAJENDRA KHADKA, KUMAR SHARMA, SANTOSH SHARMA, ANGNIMA SHERPA, RAGHUBIR SHERPA, AND YAM SUNUWAR)**

403.    Plaintiffs repeat and reallege all allegations of the preceding paragraphs as if set forth in full.

404.    NYLL Article 19 and the regulations promulgated thereunder, 12 NYCRR §§ 142-2.5(c) a require employers to reimburse an employee for the purchase of a required uniform not later than the time of the next payment of wages. *See also* 12 NYCRR § 146-1.8(a).

405.    12 NYCRR §§ 142-2.5(c), 146-1.7(a) provide that where an employer failed to launder or maintain required uniforms for any employee, he shall pay such employee in addition to the minimum wage the following amount per week for employees that work for more than 30 hours:  (1) $8.90 per week on and after January 1, 2007; (2) $9.00 per week on and after July 24, 2009; (3) $9.95 per week on and after December 31, 2013; and (4) $10.90 per week on and after December 31, 2014 until December 31, 2015.

406.    Defendants required plaintiffs to purchase and wear a uniform during the performance of their employment duties.

407.    Defendants failed to reimburse the plaintiffs for the purchase of the required uniforms.

408.    Defendants failed to launder the required uniforms and to pay plaintiffs the additional required laundry costs incurred by plaintiffs in violation of NYLL and 12 NYCRR §§ 142-2.5(c) 146-1.7(a).

409.     Pursuant to NYLL § 198.1-a and § 663, an employer who makes unlawful deductions or fails to pay the minimum wage rate as required by the Minimum Wage Act shall be liable, in addition to the amount of any underpayments, for liquidated damages for underpayments found to be due the employee, and pre-judgment interest, fees and costs.

410.     Defendants' failure to reimburse the plaintiffs for the purchase of uniforms, and failure to launder the uniforms or pay the additional required laundry costs was willful and not done in good faith.

### NINTH CLAIM FOR RELIEF

### VIOLATION OF NYLL — ILLEGAL DEDUCTIONS
**(BROUGHT ON BEHALF OF SHIVA BANIYA, JAYA BHANDARI, PRABIN GAUTAM, SONAM GYALPO, CHANDRISWOR KANDEL, RAJENDRA KHADKA, KANCHHA LAMA, PASANG LAMA, JANG PAL, DAWA SANGPO, KUMAR SHARMA, SANTOSH SHARMA, ANGNIMA SHERPA, RAGHUBIR SHERPA, AND YAM SUNUWAR)**

411.     Plaintiffs repeat and reallege all allegations of the preceding paragraphs as if set forth in full.

412.     NYLL §§ 193 and 198-b prohibits deductions other than those allowed by law.

413.     In violation of the NYLL, defendants improperly took deductions from the wages of plaintiffs for training, items broken or stolen at the location, charges for living space in management housing, and/or other expenses they incurred as employees in carrying out assigned duties.

414.     Pursuant to NYLL § 198.1-a and § 663, an employer who makes unlawful deductions or fails to pay the minimum wage rate as required by the Minimum Wage Act shall be liable, in addition to the amount of any underpayments, for liquidated damages for underpayments found to be due the employee, and pre-judgment interest, fees and costs.

415.     Defendants' taking of improper deductions was willful and not in good faith.

## TENTH CLAIM FOR RELIEF

## VIOLATION OF NYLL — NOTIFICATION AND STATEMENT OF RATE OF PAY
### (BROUGHT ON BEHALF OF ALL PLAINTIFFS)

416. Plaintiffs repeat and reallege all allegations of the preceding paragraphs as if set forth in full.

417. NYLL § 195(1)(a) requires employers to give employees notice at the time of hiring the rate or rates of pay and the basis of the rate, whether they are paid by the hour, shift, day, week, salary, piece, commission, or other and allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances. N.Y.L.L. 195(1)(a).

418. Defendants failed to provide plaintiffs notice of their rates of pay as required under the Law.

419. NYLL § 195(3) requires that employers furnish each employee with a statement with every payment of wages, listing, *inter alia*, the rate or rates of pay and the basis thereof; whether paid by the hour, shift, day, week, salary, etc.; gross wages; deductions; and net wages.

420. Defendants failed to provide plaintiffs with compliant wage statements for each week they worked.

421. Defendants' failure to provide plaintiffs notice of their rates of pay and legally adequate wage statements was willful and not in good faith.

422. NYLL § 198(1-b) and (1-d) provide for damages up to $5,000 for violations of these notice and wage statement requirements.

## PRAYER FOR RELIEF

WHEREFORE, plaintiffs respectfully request that this court enter judgment providing the following relief:

(a)    Issuance of a declaratory judgment that the practices complained of in this complaint are unlawful;

(b)    An order requiring defendants to pay all unpaid minimum wages, overtime wages, all unauthorized deductions and kick-backs, and an equal amount as liquidated damages pursuant to 29 U.S.C. § 201 et seq. and United States Department of Labor regulations;

(c)    An order requiring defendants to pay unpaid wages, minimum wages, overtime pay, spread-of-hours pay, pay illegally deducted, compensation for unauthorized deductions and kick-backs and liquidated damages in the amount of 100% under NYLL §§ 190, et seq., 650, et seq., and the supporting New York State Department of Labor regulations;

(f)    Penalties for notice violations pursuant to NYLL §;

(g)    Prejudgment interest; and post-judgment interest as allowed by law;

(h)    Attorneys' fees pursuant to 29 U.S.C. § 216(b) and NYLL §§ 198 and 663;

(i)    The costs and disbursements of this action; and

(j)    Such other relief as this court shall deem just and proper.

Dated: New York, New York
April 20, 2016

KAYE SCHOLER LLP

By: _____

Phillip A. Geraci
Michael S. Bullerman
Peter R. Lattanzio
Yonina Rosenbaum
Rebecca E. Zoller
Jennifer J. Oh
250 West 55th Street
New York, New York 10019-9710
(212) 836-8000
phillip.geraci@kayescholer.com
michael.bullerman@kayescholer.com
peter.lattanzio@kayescholer.com
yonina.rosenbaum@kayescholer.com
rebecca.zoller@kayescholer.com
jennifer.oh@kayescholer.com

THE LEGAL AID SOCIETY
Seymour James, *Attorney-in-Chief*
Adriene Holder, *Attorney-in-Charge,* Civil
Practice
Karen Cacace, *Director,* Employment Law
Unit
Richard Blum, *of Counsel*
199 Water Street, 3rd Floor
New York, New York   10038
(212) 577-3448
swjames@legal-aid.org
aholder@legal-aid.org
kcacace@legal-aid.org
rblum@legal-aid.org

*Attorneys for Plaintiffs*

60

**MAIN STREET LEGAL SERVICES, INC.**
City University of New York School of Law
Stephen Loffredo, Supervising Attorney
Jackelyn Mariano, Law Student Intern
Hoda Mitwally, Law Student Intern
Thomas Power, Law Student Intern
Alanna Sakovits, Law Student Intern
Seth York, Law Student Intern
2 Court Square
Long Island City, New York 11101
(718) 340-4300
loffredo@law.cuny.edu

*Of Counsel to Plaintiffs*